UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DOBIE WILBUR,<br><br>             Plaintiff,<br><br>     v.<br><br>CAROLYN COLVIN, Acting Commissioner of Social Security,<br><br>             Defendant. | No.: 4:14-CV-5046-EFS<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, AND REMANDING FOR ADDITIONAL PROCEEDINGS** |

Before the Court are cross-summary-judgment motions. ECF Nos. 16 & 22. Plaintiff Dobie Wilbur appeals the Administrative Law Judge's (ALJ) denial of benefits. ECF No. 16. Mr. Wilbur contends the ALJ erred because she 1) failed to fully accept the medical opinions of Mr. Wilbur's treating physicians Dr. Jeannette Flammang and Dr. Alison Madsen, 2) improperly rejected Mr. Wilbur's testimony regarding the severity and limiting effects of his impairments, and 3) the identified jobs are not consistent with Mr. Wilbur's functional limitations as the ALJ failed to include all of Mr. Wilbur's functional limitations into the hypothetical question posed to the vocational expert. The Commissioner of Social Security ("Commissioner") asks the Court to affirm the ALJ's decision that Mr. Wilbur is capable of performing substantial gainful activity in a field for which a significant number of jobs exist in the national economy. After reviewing the record and relevant authority, the Court is fully

ORDER - 1

informed. For the reasons set forth below, the Court remands this matter to require the ALJ to fully consider Dr. Flammang's and Dr. Madsen's medical opinions and Mr. Wilbur's testimony regarding the severity and limiting effects of his impairments. The Court, therefore, grants in part Mr. Wilbur's motion and denies the Commissioner's motion.

**A.   Statement of Facts[1]**

Mr. Wilbur was born in 1961. Transcript of admin. hrg. ("Tr.") at 97, ECF No. 9. Mr. Wilbur suffered severe childhood abuse. Tr. 333. Mr. Wilbur has been diagnosed with a number of psychiatric conditions, including bipolar disorder with psychosis, depression, generalized anxiety disorder, and obsessive-compulsive disorder (OCD). Tr. 276, 332-33, 353, 366-70, 385, 519, 552, 581, 643, 668, 768, 840, 871, 929, 1023-24, & 1092-94. Mr. Wilbur also suffered a variety of physical conditions: injured left thumb, cervical spondylosis with probable left C5-6 radiculopathy, hepatitis C, carpal tunnel syndrome, sacroiliitis and degenerative disc disease, lumbosacral spondylosis with degenerative changes at the thoracolumbar and lumbosacral junctions, and acromioclavicular joint degenerative changes with a small amount of sparring. Mr. Wilbur underwent surgeries and physical therapy to address many of these conditions.

From 1990-2005, he worked approximately thirty-five different jobs. Tr. 71, 231-236, & 1023. Mr. Wilbur stated that he is able to get hired but he is unable to keep a job because he is unable to multitask and

---

[1] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, the parties' briefs, and the underlying records.

ORDER - 2

maintain focus. Tr. 70-71, 74, 333, & 548. During the September 11, 2012 administrative hearing, Mr. Wilbur stated, "I've got anxieties and I would just start rambling." Tr. 53. Mr. Wilbur had to be redirected by the ALJ and at times closed his eyes while testifying in order to help focus on the question at hand. Tr. 71 & 74.

**B.   Procedural History**

Mr. Wilbur applied for disability insurance benefits and supplemental security income on August 3, 2010. Tr. 22 & 214-27. His alleged onset date of disability is March 1, 2009. Tr. 54.

Mr. Wilbur's claims were denied initially and upon reconsideration. Tr. 95-96, & 123-24. An administrative hearing was held before ALJ Caroline Siderius in September 2012, where Mr. Wilbur, vocational expert (VE) Janie Lawsen, and medical expert (ME) Margaret Moore testified. Tr. 50-51. The ALJ determined that Mr. Wilbur has the severe impairments of hepatitis C, diabetes, status post-anterior cervical discectomy and fusion (ACDF), obsessive-compulsive disorder (OCD), anxiety, and personality disorder. Tr. 24. The ALJ found though that Mr. Wilbur's sleep apnea, carpal tunnel syndrome (CTS), and musculoskeletal pain of the back, left hip, right knee, and right shoulder do not constitute severe impairments. Tr. 25. The ALJ proceeded to find that Mr. Wilbur's impairments do not meet or medically equal the severity of any listed impairments. Tr. 25-27. The ALJ ultimately determined that Mr. Wilbur has the residual functional capacity (RFC) to perform light work, as he can sit for up to six hours per day, stand and/or walk up to six hours per day, climb stairs and ramps frequently, handle and finger occasionally with his left, non-dominant hand, and occasionally stoop, kneel, and crouch, but cannot climb on

ORDER - 3

ladders, ropes or scaffolds, can only occasionally crawl, and should avoid exposure to vibration. Tr. 27.  The ALJ also determined that Mr. Wilbur can have superficial contact with the public and occasional contact with co-workers, needs a consistent routine, is able to perform one-to-three step tasks with little change in day-to-day routine, but cannot perform food industry jobs. Tr. 27. Based on this RFC assessment, which was presented to the VE, the ALJ concluded Mr. Wilbur can perform other work existing in significant numbers in the national economy, such as laundry worker and price marker, and thus he is not disabled pursuant to the Social Security Act. Tr. 37-38.

The Appeals Council denied review of the ALJ's decision. Tr. 1-7. Thereafter, Mr. Wilbur filed this lawsuit, appealing the ALJ's decision. The parties then filed the instant summary-judgment motions.

**C.   Disability Determination**

A "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The decision-maker uses a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.

Step one assesses whether the claimant is engaged in substantial gainful activities during the relevant period. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision-maker proceeds to step two.

Step two assesses whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step.

Step three compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment does not meet or equal one of the listed impairments, the evaluation proceeds to the fourth step.

Step four assesses whether the impairment prevents the claimant from performing work he has performed in the past. This includes determining the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform his previous work, he is not disabled. If the claimant cannot perform this work, the evaluation proceeds to the fifth step.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of his age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Bowen v. Yuckert*, 482 U.S. 137 (1987).

The burden of proof shifts during this sequential disability analysis. The claimant has the initial burden of establishing a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The claimant meets this burden if he

ORDER - 5

establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show 1) the claimant can perform other substantial gainful activity, and 2) that a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). A claimant is disabled only if his impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

**D.  Standard of Review**

On review, the court considers the record as a whole, not just the evidence supporting the ALJ's decision. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)). The court upholds the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision. *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)); *Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1987) (recognizing that a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance, *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such

ORDER - 6

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [ALJ] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

**E.   Analysis**

The Court addresses each of Mr. Wilbur's challenges to the ALJ's decision.

   **1.   Treating Physicians**

Mr. Wilbur contends the ALJ erred by rejecting the medical opinions of his treating physicians, Dr. Flammang and Dr. Madsen, in regard to his mental-health and physical conditions. The Court agrees.

As to Dr. Flammang, the ALJ determined that Dr. Flammang's January 2010 diagnosis of severe bipolar with psychosis was not supported by the record and gave it no weight. Further, the ALJ rejected Dr. Flammang's opinion in June 2011 that Mr. Wilbur had been disabled for the last two years due to psychiatric issues because the ALJ determined that Mr. Wilbur was described as well-appearing and that his mental-health symptoms were stable when on medication. As to Dr. Madsen, the ALJ determined that the evidence did not support Dr. Madsen's diagnosis of left low back pain from sacroiliac joint dysfunction, right shoulder pain from arthritis, hepatitis C, and bipolar disorder.

Based on the entire medical record, the Court determines the ALJ's rejection of these treating physicians' opinions is not supported by

ORDER - 7

substantial evidence in the record. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995) (requiring the ALJ to give greater weight to the opinion of a treating physician than the opinion of a non-treating physician). Both Dr. Flammang and Dr. Madsen observed, interviewed, counseled, and treated Mr. Wilbur for over a year. Their opinions were not based simply on Mr. Wilbur's reported symptoms. Instead their opinions were also based on their personal observations and interactions with Mr. Wilbur and his mental-health and physical conditions. Although the severity of his symptoms waned through the months and his symptoms were affected by his discontinuation of medication due to his failure to timely refill prescriptions at times and, on at least two occasions, his use of either alcohol or a controlled substance, the Court finds the ALJ failed to fully consider that Mr. Wilbur's inconsistent prescription use and relapses could be symptomatic of his mental-health impairment. The very nature of a mental-health impairment is that the individual experiences fluctuations in their symptoms. *See Scott v. Astrue*, 647 F.3d 734 (9th Cir. 2011). Mr. Wilbur had taken great strides in ceasing his substance abuse, albeit he had two or three uses since 2010. However, it is possible that Mr. Wilbur's substance abuse was a means by which to alleviate the symptoms his experiences as a result of his mental-health impairment. And his inability to timely refill his prescriptions could be a symptom of his mental-health impairment, and is consistent with his testimony that he is unable to maintain his focus and remember to do certain tasks on a timely basis: problems that he reported he experienced in the workforce and were the basis for many terminations. *See Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006) ("[T]he fact that substance abuse aggravated

ORDER - 8

his mental illness does not prove that the mental illness itself is not disabling.").

Further, that some medical records report that Mr. Wilbur appeared stable does not equate to a finding that that he is able to perform substantial gainful activity. As previously noted, mental-health impairment symptoms can be transitory. The medical and counselling records reflect that Mr. Wilbur may be able to focus for the limited time during the appointment but his ability to maintain focus for an entire work day is questioned by the records relating to his counseling, his self-reports, and his work-termination history.

Accordingly, after a review of the medical records and the hearing testimony, the Court concludes that the ALJ's decision to reject the opinions of Dr. Flammang and Dr. Madsen is not supported by substantial evidence. In this regard, the Court grants Mr. Wilbur's motion and denies the Commissioner's motion.

**2.   Mr. Wilbur's Credibility**

Mr. Wilbur argues the ALJ erred by failing to provide specific, clear, and convincing reasons for discrediting his testimony regarding the severity and limiting effects of his impairments. The Court agrees with Mr. Wilbur on this point as well.

A two-step analysis is used by the ALJ to assess whether a claimant's testimony regarding subjective pain or symptoms is credible. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). Step one requires the ALJ to determine whether the claimant presented objective medical evidence of an impairment, which could reasonably be expected to produce some degree of the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028,

ORDER - 9

1035–36 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Objective medical evidence of the pain or fatigue, or the severity thereof, need not be provided by the claimant. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ must accept the claimant's testimony about the severity of his symptoms unless the ALJ provides specific, clear, and convincing reasons for rejecting the claimant's symptom-severity testimony. *Id.* (recognizing that the clear-and-convincing standard is a demanding standard).

In pertinent part, the ALJ stated:

> After careful consideration of the evidence, the undersigned finds the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible for the following reasons.

Tr. 33. The ALJ proceeded to highlight that Mr. Wilbur's daily activities are quite involved as he is able to handle his personal care, prepare simple meals, and do some housework, as well as the other listed activities. The ALJ also determined that the record showed that Mr. Wilbur was not motivated to work and mentioned that Mr. Wilbur lost his last job due to a driving-under-the-influence conviction. The ALJ also highlights Mr. Wilbur's history of polysubstance abuse, that he had a couple of side-jobs since he applied for disability, and that Mr. Wilbur himself thought he would feel better mentally if he had a job. Lastly, the ALJ identifies that Mr. Wilbur's weight may be a factor in his back pain and that he had reported improvement in some of his physical maladies with physical therapy.

ORDER - 10

The Court finds the ALJ's summary and analysis of the record fails to identify those facts which support Mr. Wilbur's reported limitations. Although Mr. Wilbur is able to personally care for himself, Mr. Wilbur reported that he needs help staying on task and remembering to do certain tasks. The record supports this as Mr. Wilbur failed to order his prescription before it expired, and he has achieved employment on thirty-five occasions but failed to maintain these jobs, which he largely attributes to an inability to remain focused and on task. The record also reflects that, although Mr. Wilbur put forth considerable effort to address his physical and mental-health conditions through counseling, surgery, and physical therapy, he was unable to keep track of all of his appointments. A review of the record reflects that Mr. Wilbur's daily activities, as he described them during his testimony, are consistent with his statements regarding the severity and limiting effects of his impairments. *See, e.g., Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (recognizing that the ALJ must consider the claimant's mental-health impairment in regard to his ability to seek and follow-through with rehabilitation).

The ALJ also determined some of Mr. Wilbur's physical limitations were a result of his excessive weight. Yet, a side effect of Mr. Wilbur's medication is weight gain. In addition, Mr. Wilbur had shown the desire to reduce his weight by engaging in physical therapy, joining a gym, and engaging in some limited exercise. The record reflects that his inability to follow through on these weight-loss measures may have resulted from his inability to focus and remember—a reported symptom of his mental-health impairment.

ORDER - 11

Mr. Wilbur's desire and effort at engaging in odd jobs does not demonstrate that he can perform work-related activities on a regular and continuing basis. Rather, he held thirty-five different jobs—jobs that he was unable to maintain likely due to his inability to focus and multitask. Accordingly, a complete review of the record indicates that Mr. Wilbur was not spending a substantial part of his day engaged in pursuits that involved functions that are transferable to the work place. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (recognizing that daily activities are grounds for an adverse credibility finding only where a claimant spends a substantial part of his day engaged in pursuits involving "functions that are transferable to a work setting").

In summary, the medical evidence reflects that Mr. Wilbur's claim of severe mental and physical impairments was not "groundless." *Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996). The Court thus finds the ALJ erred at step two of the sequential evaluation process. In this regard, Mr. Wilbur's motion is granted and the Commissioner's motion is denied.

**C.    Conclusion**

For the above-given reasons, the Court remands this matter for additional proceedings. Although the Court finds the ALJ erred, it is not clear from the record, as it currently stands, whether Mr. Wilbur's severe mental and physical impairments, either singly or in combination, prevent him from performing substantial gainful employment. Further development is necessary for a proper determination.

The ALJ must take into consideration Mr. Wilbur's severe mental and physical impairments and the limitations those impairments have on Mr. Wilbur's residual functional capacity (RFC). The ALJ shall reconsider Mr.

ORDER - 12

Wilbur's statements and discuss what statements, if any, are not credible and, if necessary, what evidence undermines those statements. When re-assessing Mr. Wilbur's RFC, the ALJ is to take into consideration the medical opinions of Dr. Flammang and Dr. Madsen, as well as the other medical evidence of record relevant to Mr. Wilbur's claim for disability benefits. The ALJ shall direct Mr. Wilbur to undergo a new consultative psychological examination. If warranted, the ALJ shall elicit the testimony of a medical expert to assist the ALJ in formulating a new RFC determination. The ALJ shall present the new RFC assessment to a vocational expert to help determine whether Mr. Wilbur is capable of performing any work existing in sufficient numbers in the national economy.

Accordingly, **IT IS HEREBY ORDERED:**

1. Mr. Wilbur's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED IN PART** (remand) **and DENIED IN PART** (no immediate award of benefits)**.**

2. The Commissioner's Motion for Summary Judgment, **ECF No. 22**, is **DENIED**.

3. This matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4. The Clerk's Office is to enter **Judgment** in favor of Mr. Wilbur.

5. An application for attorney fees may be filed by separate motion by Mr. Wilbur.

///
//
/

ORDER - 13

6. The case shall be **CLOSED.**

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to counsel and ALJ Caroline Siderius.

**DATED** this 10th day of December 2015.

s/Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge